UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:21-cr-00045-1 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | Magistrate Judge Carmen E. Henderson |
| SAMIR WAHIB, | ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

Dr. Samir Wahib is charged with several offenses arising out of a purported scheme to defraud federal health care programs. Dr. Wahib moves to unseal grand jury testimony. (ECF No. 26; ECF No. 27.) In the alternative, he requests that the court conduct an *in camera* review of the requested grand jury materials to determine whether there was any abuse or defect in the proceedings. (ECF No. 26, PageID #117; ECF No. 27, PageID #652.) For the reasons that follow, the Court **DENIES** Defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Dr. Samir Wahib is a doctor of osteopathic medicine and a board-certified obstetrician gynecologist who, at the times relevant to this case, owned Women's OB/GYN Care, LLC, a women's health practice in Youngstown, Ohio. (ECF No. 27-2, PageID #667 & #671.) Previously, Dr. Wahib served as the chair of obstetrics and gynecology for Northside Hospital in Youngstown for more than a decade. (*See* ECF No. 27-10, PageID #866.)

In 2014, Dr. Wahib bought laboratory testing equipment for his office to detect sexually transmitted diseases, chlamydia and gonorrhea in particular. (ECF No. 27-2, PageID #674.) Until that time, Dr. Wahib used a lab in Pennsylvania to test specimens. (*Id.*) When Dr. Wahib began billing for laboratory services, CareSource, which insured many of his patients in Ohio's Medicaid program, referred the matter to law enforcement for investigation. (ECF No. 27-2, PageID #672.)

### A.  Alleged Offenses

On January 28, 2021, the United States indicted Dr. Wahib and co-defendant Dr. Joni Canby, both doctors of osteopathic medicine and specialists in obstetrics and gynecology. (ECF No. 1, ¶¶ 1, 2, PageID #1.) The United States accuses Dr. Wahib, Dr. Canby, and Dr. Kapon (a family physician charged in a separate indictment in *United States v. Kapon*, No. 4:21-cr-64 (N.D. Ohio)) of conspiring to defraud and defrauding federal health care programs through a kickback scheme. (*Id.*, ¶ 3, PageID #1.)

According to the indictment, after obtaining laboratory equipment capable of testing for sexually transmitted infections, Dr. Wahib paid kickbacks to Dr. Canby and Dr. Kapon for providing specimens from their patients to test. (*Id.*, ¶¶ 19–21, PageID #6.) Dr. Wahib then submitted claims to the federal government for payment of the tests. (*Id.*, ¶¶ 20–21, PageID #6.) On the checks containing the kickback payments to Dr. Canby and Dr. Kapon, the United States charges that Dr. Wahib wrote "physician coverage" in the memo line to disguise the nature of the payments. (*Id.*, ¶¶ 24, 25, PageID #6.) Further, the indictment charges that the tests Dr. Wahib

2

performed on his patients, and the tests he performed on specimens provided by Dr. Canby in exchange for kickback payments, were not medically necessary. (*Id.*, ¶¶ 39, 40, PageID # 11.) Rather, Dr. Wahib submitted false and fraudulent claims to the federal government for reimbursement to which he knew he was not entitled. (*Id.*, ¶¶ 37, 41, PageID #11.) Regarding Dr. Wahib, the United States additionally alleges that he obstructed the criminal investigation when he instructed an employee to create false records to disguise kickbacks to Dr. Canby and Dr. Kapon and later, after learning that the employee had spoken to federal agents, warned the employee that if he "went down" the employee "would go down." (*Id.*, ¶¶ 54, 57, PageID #17–18.)

Dr. Wahib disputes the charges and proffers innocent explanations for the facts on which the United States bases the indictment. For example, Dr. Wahib, Dr. Canby, and Dr. Kapon regularly covered shifts for one another, which in Dr. Wahib's view explains the notations on the checks that the United States finds suspicious. (*See* ECF No. 27-7, PageID #822–23 & #825.) As another example, Dr. Wahib maintains that he believed his payments to Dr. Canby and Dr. Kapon were lawful and that he relied on advice to that effect from, among others, the lab he previously used before purchasing his own testing equipment. (*Id.*, PageID #817 & #821.)

B.  **Charges in the Indictment**

The indictment charges the following counts against Defendant Wahib: (1) conspiracy to solicit, receive, offer and pay kickbacks in connection with a federal health care program (Count I); (2) offering or paying kickbacks in connection with a

3

federal health care program (Counts II–V); (3) conspiracy to commit health care fraud (Count VIII); (4) health care fraud (Count IX); and (5) obstruction of a criminal investigation of federal health care offenses (Count XI). (*Id.*, ¶¶ 16–58, PageID #4–18.)

### C. Motion to Disclose Grand Jury Transcript

On August 4, 2021, Defendant Wahib moved the Court for production of grand jury materials. (ECF No. 26; ECF No. 27.) With his motion, Defendant submitted declarations by his counsel (ECF No. 26-2; ECF No. 27-1) and by Dr. Kathryn Marko (ECF No. 26-26; ECF No. 27-16), as well as supporting exhibits. Defendant submitted one motion and exhibits with redacted sensitive information (ECF No. 26) and a second motion and exhibits containing the information, under seal (ECF No. 27) pursuant to the protective order entered in this matter (ECF No. 8). On October 4, 2021, the United States filed a public response opposing Defendant's motion (ECF No. 35) and a supplemental response and exhibits under seal, pursuant to the protective order (ECF No. 36). Defendant replied on November 1, 2021. (ECF No. 39.) The Court held oral argument on the motion on December 17, 2021 and took the motion under advisement.

In his motion, Defendant requests the Court to permit review of the grand jury transcript showing the United States' instructions on two issues: (1) the standard for medical necessity, and (2) the impact of exculpatory evidence of Defendant's lack of criminal intent and good faith. (ECF No. 26, PageID #92; ECF No. 27, PageID #627.) In the alternative, Defendant requests that the Court conduct an *in camera* review of

4

the relevant portions of the grand jury transcript. (ECF No. 26, PageID #117; ECF No. 27, PageID #652.)

## ANALYSIS

Rule 6(e) of the Federal Rules of Criminal Procedure implements the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). As the Supreme Court has recognized, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Safeguarding the confidentiality of grand jury proceedings serves several distinct interests, including encouraging prospective witnesses to come forward; allowing witnesses to testify "fully and frankly" without fear of retribution; mitigating the risk that those indicted would flee or try to influence individual grand jurors; and assuring that persons accused but exonerated will not be held up to "public ridicule." *Id*. at 219.

Grand jury proceedings enjoy a presumption of regularity, *United States v. Azad,* 809 F.2d 291, 295 (6th Cir.1986), but there are limits to secrecy. Rule 6(e) provides that a court may authorize disclosure of grand jury proceedings "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). Though unartfully drafted, this exception applies where the judicial proceeding for which disclosure is sought differs from the criminal trial that the grand jury's indictment authorizes. *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004); *see also In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (requiring a showing of particularized need "to avoid a possible injustice in

5

another judicial proceeding) (citing *Douglas Oil*, 441 U.S. at 222). Otherwise, this exception would render the second exception (discussed below) superfluous. *Id.* at 615–16; *see also* 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Criminal* § 108 (4th ed. 2021) ("[C]ourts have interpreted their authority to disclose material 'preliminarily to or in connection with a judicial proceeding' narrowly, to prevent the exception from swallowing the secrecy rule.").

As relevant here, a court may authorize disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A party requesting a grand jury transcript must demonstrate a "particularized need" for the transcript for the secrecy of the proceedings to be lifted in a limited manner. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). Particularized need requires a showing that the defendant's need for the material outweighs the interest in continued secrecy and that the request is tailored only to the material needed. *See In re Antitrust Grand Jury*, 805 F.2d at 161 (articulating particularized-need standard under Rule 6(e)(3)(E)(i)) (citing *Douglas Oil*, 441 U.S. at 222). This standard applies even after grand jury proceedings have concluded. *Douglas Oil*, 441 U.S. at 222. A court has substantial discretion to determine whether grand jury materials should be released. *United States v. Short*, 671 F.2d 178, 183–84 (6th Cir. 1982) (citing *Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940)). However, "the burden of establishing particularized need is necessarily heavy in order to

6

protect the secrecy of the grand jury." *In re Grand Jury 89-4-72*, 932 F.2d 481, 489 (6th Cir. 1991).

I.  **Medical Necessity Standard**

Defendant contends he has a particularized need for disclosure because the United States likely erroneously instructed the grand jury about the proper legal standard governing the tests Dr. Wahib ordered that lie at the heart of the charges against him. (ECF No. 26, PageID #110–12; ECF No. 27, PageID #645–47.) In defining the applicable legal standard, Defendant focuses on the allegations that he conspired to commit health care fraud and committed health care fraud in violation of 18 U.S.C. §§ 1347 and 1349. (ECF No. 26, PageID #103; ECF No. 27, PageID #638.) For liability to attach under these statutes, a person must act "knowingly and willfully" to defraud a health care benefit program. 18 U.S.C. § 1347. Consistent with this intent requirement, Defendant asserts that the United States must prove that Dr. Wahib ordered reimbursable tests that "he *knew* were medically *unnecessary* in violation of federal healthcare fraud statutes." (ECF No. 26, PageID #103; ECF No. 27, PageID #638.) Because of this burden, Defendant maintains that the instructions the grand jury received about the legal standard for medical necessity "substantially influenced" its decision to indict. (ECF No. 26, PageID #110–11; ECF No. 27, PageID #645–46.)

As to what constitutes medical necessity in this context, Defendant contends that the controlling authority is NCD 210.10, the National Coverage Determination for Screening for Sexually Transmitted Infections which the Center for Medicare and

7

Medicaid Services issued. ([ECF No. 26](), PageID #104; ECF No. 27, PageID #639.) Defendant argues that the United States likely failed to instruct the grand jury about NCD 210.10, despite its status as the controlling standard. Defendant draws this conclusion for two reasons. First, he argues, neither the indictment nor the report prepared by the United States' expert, Dr. White, cite NCD 210.10. ([ECF No. 26](), PageID #104–05; ECF No. 27, PageID #639–40.) Second, Dr. White's report rests on a medical necessity standard that contradicts NCD 210.10 in several ways. ([ECF No. 26](), PageID #105–10; ECF No. 27, PageID #640–45.)

### I.A.   Failure to Instruct the Grand Jury on NCD 210.10

In response, the United States contends that there is no requirement that it must instruct a grand jury regarding the specifics of an applicable NCD or other CMS regulation. ([ECF No. 35](), PageID #958.) Defendant replies that, in this case, a failure to instruct the grand jury on the NCD is "misleading and prejudicial." ([ECF No. 39](), PageID #1398.) But the authority on which Defendant relies does not support this argument. In *United States v. Chalhoub*, No. 6:16-cr-00023, 2018 WL 3651584, at *2–3 (E.D. Ky Aug. 1, 2018), the United States admitted the relevant NCD into evidence at trial, had testimony from CMS regarding the NCD, and presented evidence that the defendant did not comply with the NCD. But that case does not discuss whether the United States presented the NCD to the grand jury. Nor does it require it. *See also United States v. Chalhoub*, 946 F.3d 897, 902 (6th Cir. 2020) (affirming conviction based on claimed evidentiary errors and not addressing a claim regarding grand jury instructions).

8

Similarly, "[a]s a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed." *United States v. Twersky*, No. S2 92 Cr. 1082, 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (quotation omitted). That general rule precludes a prosecutor from presenting misleading instructions to the grand jury, and an instruction to the grand jury may be so misleading or erroneous that an indictment may not stand. *Id.* Beyond these general principles, *Twersky* does not speak to whether a failure to present to a grand jury the relevant NCD in a health care fraud case constitutes a sufficiently misleading mistake or omission to warrant disclosure under Rule 6(e).

In fact, no authority the parties discuss other than *Chalhoub* discusses or applies NCDs on the issue of medical necessity, let alone in the context of disclosure of grand jury proceedings. Various civil cases that Defendant cites treat NCDs as "substantive rules, which carry the force of law." *United States ex rel. Lynch v. University of Cincinnati Med. Ctr., LLC*, No. 1:18-CV-587, 2020 WL 1322790, at *17 (S.D. Ohio Mar. 20, 2020) (*qui tam* action under the False Claims Act). In these cases, NCDs were relevant to civil liability but not determinative. Moreover, they are civil, not criminal, cases. Defendant is not charged with violating the NCD. The parties dispute the facts and how the law and the NCD apply to them. But those issues are the province of the petit jury. As for instructing the grand jury on NCD 210.10, as the United States notes (ECF No. 35, PageID #958), the law does not require a prosecutor to instruct a grand jury regarding an applicable NCD.

9

### I.B.     Erroneous Instruction on Medical Necessity

Further, Defendant argues that the United States erred by affirmatively providing an erroneous medical necessity standard, either by instructing the grand jury based on Dr. White's expert report or by presenting information from the report directly. (ECF No. 39, PageID #1399.) Defendant identifies three areas in which Dr. White's expert report purportedly presents an erroneous standard: (1) failure to mention the factor of community prevalence of chlamydia and gonorrhea in determining medical need to test; (2) misstatement of the standard for medical need for testing during pregnancy; and (3) misstatement of the impact of poor documentation on the medical need determination. (ECF No. 26, PageID #106–10; ECF No. 27, PageID #641–645.) In rebutting Dr. White's report, Defendant relies heavily on the declaration of his own expert, Dr. Kathryn Marko. (*Id.*) Such disagreements between experts, however, as the United States notes (ECF No. 35, PageID #964), present factual disputes for trial.

To warrant disclosure of grand jury materials on the ground of improper instruction, a defendant must produce an "objective basis" to believe that the grand jury was improperly instructed. *United States v. Rattini*, No. 1:19-cr-81, 2021 WL 1105360, at *4 (S.D. Ohio Mar. 23, 2021). "Mere suspicion" is insufficient. *Id.* Defendant contends that he has presented objective evidence that the United States provided erroneous instruction on the standard of medical necessity. (ECF No. 39, PageID #1400.)

However, the indictment tracks the elements required to prove the health care fraud, kickback, and conspiracy charges under the respective statutes. (ECF No. 1.) Nothing in the indictment suggests that proof of anything less than these elements would be sufficient to find probable cause (or ultimately proof beyond a reasonable doubt) that Dr. Wahib committed the crimes charged. Accordingly, Defendant's argument rests on the premise that it was necessary to inform the grand jury on the relevant standard of medical necessity for it to make an informed decision to authorize the charges. (ECF No. 39, PageID #1399.) Defendant identifies several ways in which Dr. White's expert report, which the United States may have presented to or relied on when instructing the grand jury, differs from the standard contained in NCD 210.10 and from the standard of medical necessity about which Defendant's expert, Dr. Marko, offers conflicting opinions.

Again, the proper place to test the accuracy and applicability of expert opinions and other evidence is at trial. But Dr. White's opinions supporting probable cause presumably (and at least implicitly) rest on NCD 210.10 and other typical practices of professionals in the field. Indeed, an addendum to Dr. White's report lists various patients and whether the testing performed was medically necessary. (ECF No. 26-24, PageID #258–261; ECF No. 27-15, PageID #884–87.) At argument, the United States conceded that Dr. White's report and opinions might be more robust or complete. Even so, the Court is not persuaded that the doubts Defendant casts on Dr. White's opinion constitutes an objective basis to believe that the United States' use of Dr. White's report rises to the level of an erroneous instruction justifying

11

disclosure, particularly where the record shows he considered some evidence of medical necessity.

Further, Defendant argues that the United States' omission of NCD 210.10 from the indictment, after its inclusion in a draft charging document, shows that the United States intentionally decided not to present the controlling standard of medical necessity to the grand jury. (ECF No. 26, PageID #105; ECF No. 27, PageID #640; ECF No. 39, PageID #1400.) At oral argument, Defendant argued that the recent dismissal of charges related to medical necessity against co-Defendant Dr. Canby support his motion. (*See* Minutes, Nov. 10, 2021.) Because the United States represented that the evidence against Dr. Canby with respect to medical necessity was far stronger than the evidence against Dr. Wahib, Defendant contends that this development made it more likely the United States wrongly instructed the grand jury on medical necessity. But the grand jury found probable cause to believe that Dr. Canby ordered tests for which there was no medical necessity. (*See* ECF No. 1, ¶ 40, PageID #11.) And the fact that the United States and Dr. Canby negotiated a resolution of the charges against her resulting in a plea to charges other than the ones directly tying her to the medical necessity standard does not, without more, provide the objective evidence required to justify disclosure. Nor does the omission of NCD 210.10 from the indictment, which is not an element of the offenses with which Dr. Wahib is charged, support disclosure.

### I.C. Other Evidence

Finally, to the extent Defendant's motion challenges Dr. White's report as providing false, misleading, or inaccurate opinions to the grand jury, the United States contends that other evidence in the case, independent of Dr. White's report, raised the inference that Defendant performed medically unnecessary tests. (ECF No. 35, PageID #964.) "[A]s long as there is 'some competent evidence to sustain the charge issued by the Grand Jury' an indictment will not be dismissed solely on the basis that other evidence presented to the grand jury may have been false or misleading." *United States v. Labbous*, 82 F.3d 419 (6th Cir. 1996) (quoting *United States v. Adamo,* 742 F.2d 927, 939 (6th Cir.1984)).

Here, the United States points to patients' statements and instances where Defendant did not test patients for sexually transmitted infections before implementing the alleged scheme but tested the same patients after. (ECF No. 35, PageID #964.) Under seal, the United States submitted a summary of some of the patient-related evidence, including patient files and interview reports, that it intends to introduce at trial. (ECF No. 36, PageID #1130–40.) The United States contends that this information suffices as "some competent evidence" to sustain the indictment even if there was other "false or misleading" evidence. (ECF No. 35, PageID #964.) In reply, Defendant argues that prior failures to test at one time do not dictate the medical necessity of testing later. (ECF No. 39, PageID #1400 n.3.) This dispute presents a question of fact for the jury at trial. At this stage, the Court agrees that

13

patient-related evidence independent of the purportedly erroneous expert report (if it is erroneous) suffices to sustain the charges in the indictment.

## II.     Failure to Represent the Impact of Good Faith Evidence

Defendant contends that disclosure is warranted because the United States likely failed to represent to the jury the impact of the evidence of Defendant's good faith. (ECF No. 26, PageID #112; ECF No. 27, PageID #647.) First, Defendant argues that disclosure is warranted to determine whether the United States presented evidence of good faith to the grand jury because good faith is a complete defense to the charges and the United States had an obligation to disclose exculpatory evidence. (ECF No. 26, PageID #113–14; ECF No. 27, PageID #648–49.) Second, if the United States failed to present evidence of good faith to the grand jury, Defendant maintains that disclosure is further warranted to assess the representations the prosecutor made in response to questions from grand jurors about Defendant's good faith. (ECF No. 26, PageID #114; ECF No. 27, PageID #649.)

### II.A.  Defendant's Good Faith

As a threshold matter, the United States disputes the factual basis for Defendant's good-faith defense. (ECF No. 35, PageID #950.) Defendant points to three pieces of evidence, in the United States' possession at the time of indictment, that he argues show that he acted in good faith. (ECF No. 26, PageID #113; ECF No. 27, PageID #648.) First, Dr. Wahib's payments to Drs. Canby and Kapon were similar to payments he received from national laboratory testing companies, which the companies informed him were lawful. (*Id.*) Second, Dr. Wahib paid Drs. Canby

14

and Kapon for covering shifts for him and made no attempt to disguise payments to other physicians. (*Id.*) Third, Dr. Wahib ceased conducting testing months before learning of any investigation into his conduct. (*Id.*)

The United States has a different view. Specifically, it refutes Defendant's evidence supporting Dr. Wahib's purported good faith. First, the United States responds that the arrangements with the laboratory companies were materially different from the arrangements with Drs. Kapon and Canby. (ECF No. 35, PageID #950.) Second, the United States contends that Defendant's payments to another physician demonstrated criminal knowledge and intent, not good faith. (*Id.*, PageID #950.) Third, the United States contends that the evidence will show that Defendant stopped his arrangement with Drs. Canby and Kapon not months before any investigation but rather the day after a fraud examiner called his office. (*Id.*, PageID #949.) Further, the United States submits additional evidence under seal that it argues shows Defendant's criminal intent. (ECF No. 36.)

Though it disputes Defendant's factual arguments in its response, the United States contends that the disputed facts relating to the investigation underlying the indictment and the interpretation of evidence are matters that are appropriately addressed at trial. (ECF No. 35, PageID #937.) The Court agrees. Whether the evidence will support a jury instruction on the good-faith defense at trial, and whether Defendant's good faith will be a successful defense against the charges in the indictment, are matters beyond the scope of a motion for disclosure of grand jury materials, and the Court need not resolve them now.

15

**II.B. Obligation to Disclose Exculpatory Evidence**

After presenting the facts and evidence that Defendant argues show his good faith, he asserts that the United States had an obligation to inform the grand jury of the evidence he cites as exculpatory with respect to the charges. (ECF No. 26, PageID #113; ECF No. 27, PageID #648.) Defendant grounds this obligation on the Department of Justice policy directing prosecutors to disclose exculpatory information to the grand jury. (ECF No. 26, PageID #113–14; ECF No. 27, PageID #648–49.) But that policy acknowledges that, under *United States v. Williams*, 504 U.S. 36 (1992), a prosecutor's failure to introduce exculpatory evidence to a grand jury should not result in the dismissal of an otherwise valid indictment. DOJ Justice Manual § 9-11.233; *see also United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004). The principle that prosecutors need not present exculpatory evidence derives from the grand jury's historical role as an accusatory, not adjudicatory, body. *Williams*, 504 U.S. at 51. Based on this principle, and the sharp factual disputes between the parties over the evidence at the heart of Defendant's good-faith defense, whatever supervisory power the Court might have over grand jury proceedings does not justify disclosure on the facts and circumstances presented.

**II.C. Representations About Good Faith**

Defendant's second argument posits that, even if the United States did not present evidence of good faith to the grand jury, disclosure is nonetheless warranted to determine how the United States answered inquiries from the grand jury about Dr. Wahib's good faith. (ECF No. 26, PageID #114; ECF No. 27, PageID #649.) In an

16

attenuated argument, Defendant assumes that the United States complied with its ethical obligation under the Department of Justice policy to present exculpatory evidence, then contends it is likely that the grand jury asked questions about the impact of that evidence and that the United States then misled it about that impact. (ECF No. 39, PageID #1401.) Because Defendant's good faith was "highly relevant" to the grand jury's decision to indict, Defendant argues that disclosure of grand jury materials is warranted to "assess any statements regarding his intent and good faith." (ECF No. 26, PageID #115; ECF No. 27, PageID #650.)

Even if the United States responded to questions from the grand jury about the effect of Dr. Wahib's good faith as Defendant posits, a largely speculative exercise, there is no reason to believe that the United States misled the grand jury. Indeed, the proceedings before the grand jury enjoy a presumption of regularity. Defendant implies the grand jury could not have been properly instructed on the purported evidence of good faith and its legal effect because, if it had been, it would not have returned the indictment. But a motion challenging the indictment is not the appropriate vehicle by which a defendant may contest the truth of the charges against him. *Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951). At trial, Defendant will have a full and fair opportunity to present his evidence and argument.

To support this argument, Defendant relies on cases from outside this Circuit that are also distinguishable. (ECF No. 26, PageID #114–15; ECF No. 27, PageID #649–50; ECF No. 39, PageID #1401.) In two of the cases Defendant cites, the district

17

courts, after reviewing the grand jury transcripts, dismissed the indictments because the prosecutors improperly instructed about the issue of intent, but did not initially order disclosure of the grand jury materials for that reason. First, in *United States v. Cerullo*, No. 05-cr-01190, 2007 WL 2683799 (S.D. Cal. Sept. 7, 2007), the court reviewed the transcript of the grand jury proceedings for reasons not explained. In the prosecution of a minister for failing to report certain income, the sole issue in the case turned on the difference between an income and a gift, which the Supreme Court has long held turns on donor intent. Based on the questions and answers on the issue before the grand jury, the prosecution did not advise about "*the most critical factor*" of donor intent. As a result, the court ruled that the error undermined the independence of the grand jury. *Id.* at *2. In contrast, this case presents disputes of fact appropriate for resolution at trial and no reason to believe the grand jury lost its independence. Nor does the indictment unfairly subject Defendant to prosecution in the way that charges against a minister might under the First Amendment.

In another case, *United States v. Stevens*, 771 F. Supp. 2d 556, 564 (D. Md. 2011), the district court ordered disclosure of grand jury materials for *in camera* review in part because the defendant contended that the prosecutor failed properly to instruct the grand jury on her good-faith reliance on the advice of counsel. However, there, the United States had moved to preclude the defendant from asserting the advice-of-counsel defense because of what the court determined was an erroneous interpretation of the applicable statute. *Id.* at 559–62. Also, the United States conceded that a grand juror had asked a question about the defense and that

18

the prosecutor responded. *Id.* at 564. These facts formed an objective basis that supported review of the grand jury proceedings. No such basis is present here.

Finally, in *United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991), the court reviewed a grand jury transcript *in camera* because of inconsistencies between trial and grand jury testimony. *Id.* at 20. That review revealed erroneous and misleading instructions about intent. Again, the case has little bearing on the issue before the Court.

### III. Secrecy Interests

Defendant contends that none of the interests that grand jury secrecy serves and promotes is present in this case. (ECF No. 26, PageID #115–17; ECF No. 27, PageID #650–52.) However, because the Court determines that Defendant has not made a showing of particularized need, the Court need not address the secrecy interests in this matter. While a district court has "wide discretion to decide whether the need for secrecy predominates or the need for disclosure predominates," the moving party must first make a showing of compelling necessity for the grand jury material, "before a decision in favor of disclosure can be made." *Federal Deposit Ins. Corp. v. Ernst & Whinney*, 921 F.2d 83, 86 (6th Cir. 1990) (quoting *In re Grand Jury Proceedings*, 841 F.2d 1264, 1268 (6th Cir. 1988)). Defendant has not shown a particularized need for disclosure of grand jury materials that outweighs the strong presumption in favor of secrecy.

19

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to disclose the grand jury transcript ([ECF No. 26](ECF No. 26); ECF No. 27).

**SO ORDERED.**

Dated: January 4, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio